25CA1399 Peo in Interest of Hines 10-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1399
Pueblo County District Court No. 25MH30065
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Brandon Alexander Hines,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Defendant-Appellant

¶ 1 Brandon Alexander Hines appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (CMHHIP) to involuntarily administer medication to him. We affirm.

## I. Background

¶ 2 Hines was committed to CMHHIP in April 2025 after a finding of incompetence in a criminal case. He has been diagnosed with psychosis, not otherwise specified. Untreated, he exhibits symptoms including paranoia, delusions, agitation, and impulsivity. While in jail awaiting his transfer to CMHHIP, he refused meals and claimed that his food was poisoned. He also placed tissue paper in his nose so he would not be "poisoned by gases," and he covered his cell windows in toilet paper and feces.

¶ 3 Shortly after his arrival at CMHHIP, Hines began refusing scheduled medications. Consequently, CMHHIP staff sought authorization to involuntarily administer olanzapine (Zyprexa), lithium, and haloperidol (Haldol). The People filed a petition requesting that the district court review Hines's refusal of treatment.

¶ 4 The court held an evidentiary hearing, at which Hines and the psychiatrist supervising his care and treatment, Dr. Hareesh Pillai,

testified. After hearing the evidence, the court found that Dr. Pillai had testified "credibly and persuasively," and that the People had established all four elements for the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961 (Colo. 1985).[1] It therefore granted the petition and authorized the involuntary administration of the requested medications.

## II. Applicable Law and Standard of Review

¶ 5 A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less

---

[1] Although a different test applies when the involuntary administration of drugs is sought only for the purpose of rendering a defendant competent to stand trial, *see Sell v. United States*, 539 U.S. 166, 181 (2003), the test established in *People v. Medina*, 705 P.2d 961 (Colo. 1985), controls when the government seeks to involuntarily administer drugs to further other purposes, such as those "related to the individual's dangerousness" or those related to an individual's own health interests. *See Sell*, 539 U.S. 181-82; *People In Interest of R.F.*, 2019 COA 110, ¶ 11 n.1.

intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.* at 973.

¶ 6     When, as here, a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo but defer to its factual findings if they have record support. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the evidence as a whole and in the light most favorable to the petitioning party, leaving the resolution of testimonial conflicts and the determination of witness credibility solely to the fact finder. *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *R.C.*, ¶ 7. Where there is ample evidence in the record to support the court's findings and conclusions, we may not substitute our judgment for that of the district court. *Uwayezuk*, ¶ 57.

## III. Discussion

¶ 7    Hines contends only that the evidence presented at the hearing was insufficient to prove the first *Medina* element — namely, that he is incompetent to effectively participate in the relevant treatment decision. This is so, he argues, because at the hearing he "demonstrated a clear insight into his symptoms and how the medications work to treat them." Specifically, he explained that he preferred to take Seroquel over Zyprexa because Seroquel helped him sleep. We perceive no insufficiency in the evidence supporting the challenged element.

¶ 8    At the hearing, Hines testified that he had not been diagnosed with any mental illness or condition other than ADHD. He denied that he had any psychotic disorder or psychotic symptoms such as paranoia, delusions, and agitation. Asked about the incidents when he covered his jail cell windows with toilet paper and feces, he responded, "[I]t was Saran wrap and peanut butter." And when asked about the medications he wished to take, he stated that he would prefer to take Seroquel, not because it directly treated his psychosis, but because it allowed him to get a good night's sleep,

think more logically, and have less mania and fewer delusions, symptoms which he believed "tie[d] into having ADHD."

¶ 9 Dr. Pillai, in contrast, testified that Hines has been diagnosed with psychosis, not otherwise specified, which causes his paranoid and delusional symptoms, including fears that he is being poisoned or gassed. Asked if Hines's ADHD could cause these symptoms, Dr. Pillai responded, "No." He stated that Hines has no insight into his mental illness and is incompetent to effectively participate in decisions affecting his health, including decisions about whether psychiatric medication is required. Indeed, even when stabilized on psychotropic medications, the doctor testified, Hines "continues to deny suffering from any type of psychiatric illness."

¶ 10 Dr. Pillai acknowledged that he was aware of Hines's preference to take Seroquel instead of Zyprexa, and that Seroquel can be used to treat symptoms of the sort Hines exhibits. However, Dr. Pillai testified that he was not aware that Seroquel had ever improved Hines's symptoms; it required a higher dosage with more potential side effects; and it was a less effective treatment than Zyprexa, especially given that Hines had responded well to Zyprexa in the past.

¶ 11    After expressly adopting the opinions expressed by Dr. Pillai, the district court found that, notwithstanding Hines's limited insight into some of his health conditions, he has no insight "into [his] specific mental health disorder of psychosis, not otherwise specified, as he is completely denying that and that there are any issues with that." The court therefore found that Hines is incompetent to effectively participate in his mental health treatment decisions.

¶ 12    Deferring to the district court's determination that Dr. Pillai's testimony was credible, as we must, and viewing the record in the light most favorable to the People, we conclude that the record amply supports the court's finding that Hines's lack of insight into his mental condition renders him incompetent to effectively participate in the treatment decision. *See id.*; *see also People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992) (a physician's testimony alone may constitute clear and convincing evidence).

¶ 13    Accordingly, we will not disturb the court's order.

## IV.   Disposition

¶ 14    The order is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.